UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CHARLES CARD,<br>      Plaintiff<br><br>VERSUS<br><br>JOE KEFFER, et al.,<br>      Defendants | CIVIL ACTION<br>SECTION "P"<br>1:10-CV-01195<br><br><br>JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a complaint filed pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999 (1971) and the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680,[1] by plaintiff Charles Card ("Card") on July 13, 2010 and amended on September 27, 2010 (Doc. 11) and November 3, 2010 (Doc. 19). The named defendants are Joe Keffer ("Keffer") (former warden of the United States Penitentiary in Pollock, Louisiana ("USP-Pollock")), Spencer Smith (Health Services Administrator at USP-Pollock), Belinda Bacon (Assistant Health Services Administrator at USP-Pollock"), Joel Alexandre (Clinical

---

[1] <u>Bivens</u> defendants are federal officials brought into federal court for violating the Federal Constitution. <u>Bivens</u>-type actions may be brought only against federal agents and not federal agencies. <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 486, 114 S.Ct. 996, 1006, 127 L.Ed.2d 308 (1994); <u>Whitley v. Hunt</u>, 158 F.3d 882 885 (5th Cir. 1998). Under <u>Bivens</u>, a plaintiff may recover damages for any injuries suffered as a result of federal agents' violations of his constitutional rights. <u>Channer v. Hall</u>, 112 F.3d 214, 216 (5th Cir. 1997).

Director at USP-Pollock"), Andre Molina[2] (a physician employed at USP-Pollock), and the United States of America. Card contends that, while he was incarcerated in USP-Pollock from August 6, 2009 through the present, defendants subjected him to unconstitutional conditions of confinement by denying him medical care for an injury to his left knee, resulting in contributory injuries to his right knee and left ankle one year later. Card also alleges that each defendant has told him he would not be provided with necessary medical care because it is too costly.

For relief, Card asks for a writ of mandamus, a preliminary injunction, monetary damages, and an evidentiary hearing. Card is presently confined in the USP-Beaumont in Beaumont, Texas.

Defendants did not answer the complaint, but filed a motion for summary judgment instead (Doc. 14). Defendants' motion was granted in part, in favor of defendants Smith and Bacon, on the basis that Smith and Bacon, both commissioned Public Health Services Officers assigned to the Bureau of Prisons, are wholly immune from liability for their acts of medical negligence under 42 U.S.C. § 233. In accordance with the Supreme Court's opinion in Hui v. Castaneda, 130 S.Ct. 1845 (U.S. 2010), the United States was substituted as the party defendant and the claim was characterized as pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680.

---

[2] Card refers to Dr. Molina as Dr. Andre Molina Ossers (Doc. 19). However, both defendants and the documentary evidence show that his last name is Molina.

2

The remainder of defendants' motion for summary judgment (Doc. 15), filed by Keffer, Alexandre, and Molina is now before the court for disposition.

Law and Analysis

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material". A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.  However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff.  <u>Stewart v. Murphy</u>, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial.  In this analysis, we review the facts and draw all inferences most favorable to the nonmovant.  <u>Herrera v. Millsap</u>, 862 F.2d 1157, 1159 (5th Cir. 1989).  However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment.  <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82(1992).

<u>Denial of Medical Care</u>

Card contends defendants denied him medical care for his 2009 left knee injury and his 2010 right knee and hip injury due to cost.

1.

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is

4

"sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Supreme Court defined "deliberate indifference" as "subjective recklessness", or, in other words, a conscious disregard of a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994). Because an inadvertent failure to provide adequate medical treatment does not violate the Eighth Amendment, deliberate indifference does not include a complaint that a physician has been negligent in diagnosing or treating a medical condition, Estelle, 97 S.Ct. at 291, or a difference of medical opinion between the prison's medical staff and the inmate about what medicines or treatments the inmate should be receiving, Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006), citing Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). A prison official is also

deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care. Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987).

In order to show that his medical care violated the Eighth Amendment, an inmate must allege that prison officials were deliberately indifferent to his serious medical needs. Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997), citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). "Subjective recklessness, as used in the criminal law, is the appropriate test for deliberate indifference. Norton, 122 F.3d at 291, citing Farmer v. Brennan, 511 U.S. 825, 838-40, 114 S.Ct. 1970, 1980 (1994).

2.

Card contends defendants failed to give him appropriate medical care because he was not examined by a medical doctor initially and because he was not provided MRIs, an appointment with an orthopedist, and knee surgery.

In August 2009, Card complained of chronic left knee pain for three months and was given Ibuprofen 600 mg three times a day by the nurse practitioner and x-rays were ordered (Doc. 93, pp. 104/189-105/189); Card was also restricted from all sports (Doc.

6

93, p. 127/189). In December 2009, Card asked to see a doctor for his knee pain and was provided with ACE bandages (Doc. 93, p. 99/189). In January 2010, Card continued to ask to see a doctor for his knee pain (Doc. 93, pp. 96/189-97/189).

In January 2010, Card complained again of aching pain in both knees aggravated by prolonged walking and jogging, and requested an MRI which Dr. Andre Molina denied (Doc. 93, p. 92/189). Dr. Molina noted the previous MRI (prior to Card's incarceration[3]) of the left knee revealed only mild degenerative joint disease and mild effusion, diagnosed osteoarthritis, prescribed Ibuprofen 600 mg three times a day, and advised Card to avoid excessive sports activities or any physical activities that aggravate his pain (Doc. 93, pp. 93/189-94/189). X-rays of Card's left ankle were ordered (Doc. 93, p. 96/189).

In March 2010, Card complained of chronic left knee pain as well as right knee pain, again requested an MRI, and asked to see a doctor (Doc. 93, p. 86/189). The nurse practitioner noted Card had already been diagnosed wirh osteoarthritis but refused to believe it, and gave Card two new ACE wraps (Doc. 93, p. 87/189).

In April 2010, Card was evaluated for left knee pain by Dr. Joel Alexandre, a family medicine doctor, who diagnosed osteoarthrosis aggravated by excessive sports activities, and

---

[3] There are four MRI's in the record, all performed in 2000 (Doc. 93, pp. 171/189-174/189).

7

ordered blood work and x-rays (Doc. 93, pp. 115/189-116/189). In May 2010, Dr. Alexandre noted Card was able to flex both knees fully, but had positive grinding of the left patella, tenderness in the right patella, and the x-rays showed degenerative disease (Doc. 93, p. 113/189). Card's left knee IKDC[4] subjective knee evaluation showed 38 % disability (Doc. 93, p. 113/189).

In June 2010, Card complained of knee pain and the nurse practitioner noted he was obsessing about the "injury" to his knee, stating that no recent injury was noted (Doc. 93, p. 69/189). In July 2010, Card complained of aching pain in both knees and his right ankle; he injured his left knee while playing basketball in 2000 followed by surgery in 2002 and reinjury in August 2009, and injured his right knee while walking in February 2009 (Doc. 93, p. 65/189). Card complained he was unable to practice sports after the August 2009 injury and requested MRIs of both knees (Doc. 93, p. 65/189). Dr. Andre Molina noted x-rays showed degenerative joint disease (arthritis) in Card's left knee (Doc. 93, p. 65/189), were negative for Card's right knee (Doc. 93, p. 135/189), and diagnosed osteoarthrosis, post-traumatic arthris of the knees aggravated by exessive sports activities, and chronic pain (Doc. 93, p. 66/189). Dr. Molina offered Card pain medication which he refused, advised him to avoid high impact sports, and again denied the request for MRIs (Doc. 93, p. 66/189).

---

[4] International Knee Documentation Committee.

In September 2010, Card complained of knee pain, was diagnosed by a phsycian's assistant with post-traumatic arthritis of the knees aggravated by excessive sports activities, and prescribed Ibuprofen 600 MG three times a day (Doc. 93, pp. 28/189-29/189). Dr. Joel Alexandre ordered blood work to rule out mixed connective tissue disease in Card's knees (Doc. 93, p. 27/189), authorized Card to carry a cane due to acute chronic right knee pain (Doc. 93, p. 26/189), ordered a repeat x-ray of Card's knees (Doc. 93, p. 25/189), and ordered that Card be given exercises for patellofemoral syndrome (Doc. 93, p. 27/189). Card was provided with a cane (Doc. 93, p. 35/189) and placed on a "medical duty status" (Doc. 93, pp. 41/189-42/189). The x-rays showed trace effusion in Card's right knee (Doc. 93, p. 61/189).

In January 2011, Card complained of left knee pain due to an injury during exercise (jumping jacks, squats, squat thrust, kick boxing, and jogging) on August 6, 2009 and re-injury on September 6, 2009 (Doc. 93, p. 17/189). Card stated he had previously received oral medicine and surgery to his knee in 2002 (to repair a fracture) which had not relieved the problem (Doc. 93, pp. 17/189-18/189). Card further complained of an injury to his right knee on November 16, 2009 and re-injury on September 6, 2010, but the previous treatment of oral medication and surgery (to repair the meniscus and cartilage) was not adequate (Doc. 93, p. 17/189-18/189). In January 2011, Dr. Alexandre noted that Card's IKDC

9

score was 14 % disability in the right knee and 29 % disability in the left knee (Doc. 93, p. 19/189).

Card again complained of knee pain in February 2011; Dr. Alexandre found DJD with trace effusion in the right knee, but a normal gait and full extension and flexion bilaterally and diagnosed post-traumatic arthritis of the knees aggravated by excessive sports activities (Doc. 93, p. 13/189-14/189). In May and June 2011, Card complained of chronic pain in both knees, more in the left than the right, and stated the medial side of his right knee was "going" and that the medial side of his left knee had "already went," so he wanted see an orthopedist (Doc. 93, p. 8/189-10/189). Dr. Alexandre diagnosed post-traumatic arthritis of the knees aggravated by excessive sports activities, and noted that Card appeared to be in pain (Doc. 93, p. 9/189). Dr. Alexandre ordered Ibuprofen 600 mg three times a day as needed for Card's osteoarthrosis (Doc. 93, pp. 7/189, 11/189). In July 2011, Dr. Alexandre again ordered an x-ray of Card's knee due to arthritis (Doc. 93, p. 2/189).

3.

It is clear that Card has not been denied medical care. Instead, Card complains about the medical care he has received, demanding MRI's, evaluation by an orthopedist, and surgery. However, inmates are entitled to reasonable medical care, not to the best medical care that money can buy. Mayweather v. Foti, 953

F.2d 91 (5th Cir. 1992). Moreover, as stated above, a difference of opinion as to treatment does not constitute denial of medical care. Finally, Card has not shown that any of the defendants have been deliberately indifferent to his serious medical needs.

Since there are no genuine issues of material fact as to whether defendants were deliberately indifferent to Card's serous medical needs, defendants' motion for summary judgment should be granted and Card's complaint against Keffer, Molina and Alexandre should be dismissed with prejudice.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment (Doc. 14) be GRANTED in favor of defendants Keffer, Molina and Alexandre, and that Card's action be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 29th day of September, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE